# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

LAWRENCE J. LAMONT and
CAROL A. LAMONT,

               Plaintiffs,

      v.                               Case No. 07-C-1160

WINNEBAGO INDUSTRIES, INC.,

               Defendant.

## DECISION AND ORDER

      Wisconsin residents Lawrence and Carol Lamont ("the Lamonts") purchased a new 2005 Winnebago Sightseer from Crystal Valley RV, a motor home dealership located in Island Lake, Illinois. The Lamonts allege the motor home had a number of mechanical difficulties and was repeatedly repaired under the provisions of a limited warranty provided by the manufacturer, Winnebago Industries, Inc. ("Winnebago"). Claiming the repair work was unsuccessful, the Lamonts notified Winnebago of the defects in the motor home and demanded that Winnebago accept return of the vehicle and provide a comparable new motor home in its place pursuant to Wisconsin's "Lemon Law," codified at section 218.0171 of the Wisconsin Statutes (2005-06).[1] When Winnebago failed to comply with their demands, the Lamonts filed suit in Brown County Circuit Court under the Lemon Law and the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* Winnebago removed the case to this Court pursuant to 28 U.S.C. § 1441, asserting federal

---

[1]All references to the Wisconsin Statutes are to the 2005-06 edition.

jurisdiction under 28 U.S.C. §§ 1331 and 1332, and filed a motion for summary judgment on all claims. For the reasons that follow, Winnebago's motion will be granted in part and denied in part.

**BACKGROUND**

Lawrence Lamont and his wife Carol live in Malone, Wisconsin. (Lawrence A. Lamont Aff. at ¶ 2.) In the summer of 2005, Mr. Lamont accompanied his sister to Crystal Valley RV in Island Lake, Illinois, where she purchased a 2005 Winnebago Sightseer. (*Id.* ¶¶ 3-4.) Mr. Lamont was interested in purchasing a similar motor home and spoke with salesman Tim McCloyn. (*Id.*) On September 26, 2005, Mr. Lamont spoke with Mr. McCloyn by telephone about a 2005 Winnebago Sightseer that was available for purchase. (*Id.* ¶ 5.) The price was negotiated over the phone, with Mr. Lamont at his home in Malone, Wisconsin and Mr. McCloyn at Crystal Valley RV in Island Lake, Illinois. (*Id.*) Mr. Lamont agreed to purchase the motor home and paid a $1,000 deposit over the phone with his Discover credit card. (*Id.*)

The Lamonts traveled to Crystal Valley RV on September 28, 2005 and paid the remaining $66,955 due on the motor home with a cashier's check and their Mastercard and Discover credit cards. (*Id.* ¶¶ 7, 9.) When the Lamonts arrived, the motor home had a "SOLD" tag in the window bearing their name and signed by Mr. McCloyn, dated September 26, 2005. (*Id.* ¶ 8, Ex. B.) The Lamonts signed all of the required paperwork, including the purchase order, at Crystal Valley RV on September 28, 2005. (*Id.* ¶ 10; Def.'s PFOF at ¶ 4.) They arranged to pick up the vehicle at a later date, returning to Crystal Valley RV on October 27, 2005 to pick up the keys and again on November 2, 2005 to take possession of the motor home. (Lawrence A. Lamont Aff. at ¶¶ 11-12.)

2

Winnebago Industries, Inc. manufactured the Sightseer motor home and provided a one-year 15,000 mile New Vehicle Limited Warranty as well as Winnebago Industries' Coach-Net Roadside Assistance program with the purchase of the Sightseer. (*Id.* ¶¶ 13-14; Def.'s PFOF at ¶ 8.) The Lamonts also purchased an extended warranty from the dealer, called the FreedomCare Motorhome & Travel Trailer Service Agreement. (Def.'s PFOF at ¶ 12.)

Following their purchase of the motor home, the Lamonts filled out and returned a Wisconsin Title and License Plate Application dated December 27, 2005. (Lawrence A. Lamont Aff. at ¶ 16, Ex. O.) They received a letter from the Wisconsin Department of Transportation dated February 15, 2006 requesting an additional ten dollars to process the application, and, after they paid the additional fee, a Wisconsin Certificate of Title was issued in their name on March 16, 2006. (*Id.* ¶¶ 18-20, Ex. P-Q.)

The Lamonts allege they experienced a number of problems with their new motor home. The engine bucked, misfired, ran roughly, and stalled while running. (*Id.* ¶ 21.) The vehicle failed to start, there were problems with the turn signals, coach batteries, drive shaft, solenoid, temporary harness connector, CKP sensors, PCM, coils, a short due to a chaffed wire, and there were noises from the front end while the vehicle was moving. (*Id.*; Compl. ¶ 6.) Each time one of these problems occurred, the Lamonts called Winnebago's Coach-Net Roadside Assistance and drove the vehicle (or had it towed) to a repair facility chosen by Coach-Net. (Lawrence A. Lamont Aff. at ¶ 22.) Repairs were attempted from April 14-21, 2006; July 5-16, 2006; August 3-4, 2006; and August 11-15, 2006. (*Id.*)

On July 17, 2007, the Lamonts notified Winnebago of the defects and demanded that Winnebago accept return of the vehicle and provide them with a comparable new motor home under

3

Wisconsin's Lemon Law, section 218.0171 of the Wisconsin Statutes. (Compl. at ¶ 8, Ex. B.) Winnebago provided neither a refund nor a new vehicle and the Lamonts filed this lawsuit claiming that Winnebago violated the Lemon Law as well as the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* (*Id.* ¶¶ 11, 16.)


**ANALYSIS**

**I. Summary Judgment Standard**

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Summary judgment should be granted when a party that has had ample time for discovery fails to "make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." 477 U.S. at 322. Should the moving party establish the absence of a genuine issue of material fact, the non-moving party must demonstrate that there is a genuine dispute over the material facts of the case. *Id.* at 323-24. "In determining whether a genuine issue of material fact exists, all facts are construed in favor of the nonmoving party." *Springer v. Durflinger*, 518 F.3d 479, 483-84 (7th Cir. 2008).


**II. Lemon Law Claim**

Wisconsin's "Lemon Law" is a remedial statute, which, like similar laws nationwide, provides for the protection of consumers who purchase new motor vehicles that turn out to be

4

defective (colloquially known as "lemons"). *Garcia v. Mazda Motor of America, Inc.*, 2004 WI 93, ¶ 1, 273 Wis. 2d 612, 682 N.W.2d 365. In its motion for summary judgment, Winnebago does not address whether the motor home it manufactured was defective, or a "lemon," recognizing that this is a disputed issue of fact that cannot be resolved on summary judgment. Instead, Winnebago argues that the Lamonts may not recover under the Lemon Law in any event, because the motor home is not a "motor vehicle" within the meaning of the statute.

For purposes of Wisconsin's Lemon Law, the term "motor vehicle" is defined as "any motor driven vehicle required to be registered under Ch. 341 . . . which a consumer purchases or accepts transfer of in this state." Wis. Stat. § 218.0171(1)(d). As residents of Wisconsin, the Lamonts were required to register their motor home under Chapter 341 in order to operate it upon the highway. Wis. Stat. § 341.04(4). Thus, for Wisconsin's Lemon Law to apply, they must have either purchased the motor home or accepted transfer of it in Wisconsin.

Winnebago claims that the Lamonts neither purchased nor accepted transfer of the motor home in Wisconsin because they paid the balance of the purchase price in Illinois, signed the contract in Illinois, and picked the vehicle up in Illinois. (Def.'s Br. Supp. Mot. Summ. J. 2-3.) In addition, it contends that the Lamonts were not "consumers" within the meaning of the statute. (Def.'s Reply Br. 2-3.)

**A. Place of Purchase**

Despite the fact that they purchased their motor home from an Illinois dealer, the Lamonts contend that the place of purchase was Wisconsin. In support of their argument, they rely on *Henry ex rel. Weis v. General Casualty Co. of Wisconsin*, 225 Wis. 2d 849, 593 N.W.2d 913 (Wis. Ct. App. 1999), in which the Wisconsin Court of Appeals addressed the transfer of ownership of a

5

motor vehicle in the context of a dispute over whether insurance coverage existed under a automobile dealer's garage liability policy. In *Henry*, a woman who had agreed to purchase the loaner she was allowed to use by the dealer where she brought her truck for repairs was involved in a fatal accident while driving the car. Although she had not yet signed the purchase contract or paid for the car, the insurer for the dealer argued that ownership was transferred before the accident because the woman had agreed to purchase the vehicle and had already taken possession. The Court of Appeals disagreed and held that "to transfer ownership when a dealer is one of the parties to an automobile sale, the parties must sign the contract *or* the dealer must accept a down-payment, deposit or title for trade unit from a prospective customer." 593 N.W.2d at 916. The Lamonts argue from this that they purchased the motor home when they made the initial down payment and, because they made the down payment via credit card over the telephone from their home in Wisconsin, they contend the purchase occurred in Wisconsin.

But *Henry* deals with the question of what is necessary to transform a customer's consensual use of a vehicle into a transfer of ownership from an automobile dealer for insurance purposes; it does not address the issue raised here of where a purchase occurs. The ordinary meaning of the word "purchase" is "to obtain by paying money or its equivalent; to buy." *Merriam-Webster's Collegiate Dictionary*, at 948 (10th ed. 1999). The place of purchase would therefore be the location where such an exchange took place. The Lamonts cite no authority that supports their contention that by making a down payment via credit card over the telephone from their home in Wisconsin, they were purchasing the motor home in Wisconsin, as opposed to Illinois where the dealership was located and the down payment was received. Making a credit card payment by phone is no different than sending a check via mail. Neither action transfers the place of purchase from the location of

6

the seller to the purchaser's home. Crystal Valley RV did not part with the motor home until the full payment was received by it. The exchange and, hence, the purchase thus occurred in Illinois.

*Begalke v. Sterling Truck Corp.*, 437 F. Supp.2d 847 (W.D. Wis. 2006), which dealt with the precise language at issue here, is also of no help to the Lamonts. In *Begalke*, the salesperson for a Minnesota truck dealer traveled to the plaintiffs' home in Wisconsin where the plaintiffs signed a purchase order and gave the salesperson a check for the down payment. The plaintiffs later traveled to Minnesota to pick up their new truck. When they continued to have mechanical problems with the truck, the plaintiffs brought an action under section 218.0171. The truck dealer sought summary judgment on the ground that the truck was not a "motor vehicle" within the meaning of the Lemon Law because plaintiffs did not purchase it or accept transfer of it in the State of Wisconsin. The district court denied the defendant dealer's motion. Relying on *Henry*'s holding that a purchase occurs when the parties sign the contract, or the dealer accepts a down-payment, deposit or title for trade unit from a prospective customer, Judge Crabb concluded that the purchase had occurred in Wisconsin because the parties signed a purchase contract and the dealer accepted a down payment at plaintiffs' home in Wisconsin. *Id.* at 850.

Here, of course, unlike *Begalke*, the dealer never came to Wisconsin. The Lamonts made a down payment over the telephone and traveled to Illinois to sign the contract documents, pay the balance of the purchase price and take delivery of the motor home. In the plain and ordinary sense of the word, they purchased the motor home in Illinois. Based on these facts, I conclude that the purchase did not occur in Wisconsin.

### B. Place of Transfer

Notwithstanding the fact that they traveled to Illinois to pick up their motor home, the Lamonts also argue that they "accepted transfer" of the motor home in Wisconsin. Their argument

7

is based on the fact that title to the vehicle was issued to them in Wisconsin. They note that the Wisconsin legislature also used the word "transfer" elsewhere in the Lemon Law in reference to transferring title to a motor vehicle. *See* Wis. Stat. §§ 218.0171(2)(c) and (2)(cm)2. From this, they argue that the legislature must have intended the word "transfer," as used in the definition of motor vehicle in section 218.0171(d), to refer to the title to the motor vehicle, as opposed to the vehicle itself. The Lamonts argue that this interpretation also finds support in Chapter 342 of the Wisconsin Statutes, particularly section 342.15(3), which provides that a transfer of a motor vehicle is not effective until the provisions of that section regarding transfer of title have been complied with. (Br. Opp. at 12.)

The argument that the word "transfer" in section 218.0171(1)(d) refers to transfer of title to a motor vehicle, as opposed to transfer of the vehicle itself, is unconvincing for the simple reason that it contains no mention of the word "title." Unlike those provisions of the Lemon Law where the legislature meant to refer to the transfer of title to a motor vehicle, the language used to define motor vehicles covered by the Law does not say transfer of title. The Law applies to "any motor driven vehicle required to be registered under ch. 341 or exempt from registration under s. 341.05(2) . . . , *which a consumer purchases or accepts transfer of in this state*." Wis. Stat. § 218.0171(1)(d) (italics added). The language and structure of the statute indicates that the word "transfer" applies to motor vehicles, not title to motor vehicles. If the legislature intended otherwise, it could have easily said so. *Compare Harmon v. Concord Volkswagon, Inc.*, 598 A.2d 696 (Del. Super. 1991) (applying Delaware Lemon Law which applied to any passenger motor vehicle leased or bought in Delaware or registered in the state).

Consideration of Chapter 342 does not change the result; in fact it reenforces the conclusion that a transfer of ownership from a dealer to a buyer is separate and distinct from the issuance of a

new title. Chapter 342, which is Wisconsin's codification of the Uniform Motor Vehicle Certificate of Title and Anti-Theft Act, 11 Uniform Laws Annotated, § 1 *et seq*. (1974), places great emphasis on certificates of title as evidence of ownership. *National Exchange Bank of Fond du Lac v. Mann*, 81 Wis. 2d 352, 357, 260 N.W.2d 716, 718 (Wis. 1978). But it is clear from a review of its language that, at least as between the parties themselves, a transfer of ownership takes place before a new title to a vehicle is issued. Section 342.15(1)(a), for example, sets forth the steps that must be followed regarding issuance of a new title "[i]f an owner transfers an interest in a vehicle, other than by the creation of a security interest . . . ." And section 342.16, which governs transfers to or from a dealer, provides that "[w]ithin 7 business days following the sale or transfer, the dealer shall process the application for certificate of title . . . ." Wis. Stat. § 342.16(1)(a). Implicit in the fact that these statutes prescribe steps that must be taken *after* an interest in a motor vehicle is transferred is the recognition that the transfer of the interest occurs prior to the issuance of a new title. It is true, as the Lamonts point out, that section 342.15(3) states that ". . . a transfer by an owner is not effective until the provisions of this section have been complied with." But they have left out crucial language from the sentence from which their quotation is taken. The entire sentence reads: "Except as provided in s. 342.16 and as between the parties, a transfer by an owner is not effective until the provisions of this section have been complied with." Here, the Lamonts were parties to the transfer and section 342.16 governs transfers to and from a dealer. Thus, both exceptions apply and the transfer was effective as to the Lamonts even before a new title was issued to them.

The Lamonts also argue that if the legislature intended the word transfer to mean simply delivery, they would have used the word delivery in the statute instead of transfer. Moreover, they

9

contend, unless the word "transfer" is construed to apply to transfer of title, the phrase "accepts transfer of" in the Lemon Law's definition of motor vehicle law adds nothing beyond the requirement that the purchase occur in Wisconsin which is already part of the statute. "Accepts transfer," they argue, must mean something different than purchase. (Br. Opp. at 11.) But of course, "accept transfer of" does mean something different than purchase. As noted above, purchase means to pay money for, to buy. *Infra* at 6. But sometimes the payment of money can occur at one time and place, and the delivery or transfer of ownership of the goods purchased at another. Wisconsin's Lemon Law defines motor vehicles in such a way so that if either occurs in the State, the vehicle is covered. More importantly, Wisconsin's Lemon Law also covers leases of motor vehicles. *See* Wis. Stat. § 218.0171(1)(a)4. When a motor vehicle is leased, transfer is accepted without any purchase taking place.

Based on the plain and unambiguous text of the statute, I conclude that the phrase "accept transfer of," as used in section 218.0171(1)(d), refers to transfer of possession of the motor home. Since it is undisputed that the Lamonts traveled to the dealership in Illinois to take possession of the motor home, I conclude that they did not accept transfer of the motor home in Wisconsin. For this reason and because, as concluded above, the motor home was not purchased in Wisconsin either, it follows that the motor home is not a "motor vehicle" within the meaning of Wisconsin's Lemon Law.[2] Summary judgment will therefore be granted on this claim.

---

[2] Because I have concluded that the Lamonts neither purchased the motor home, nor accepted transfer of it in Wisconsin, it is not necessary to address Winnebago's further argument that the Lamonts are not consumers within the meaning of the Law.

10

### III. Magnuson-Moss Warranty Act Claim

The Magnuson-Moss Warranty Act ("the Act"), 15 U.S.C. §§ 2301 *et seq.*, was adopted in 1974 to provide consumers with greater protection by making warranties more easily understandable and enforceable. *Auto. Imps. of America, Inc. v. State of Minn.*, 871 F.2d 717, 718 (8th Cir. 1989). The Act provides that a consumer who is damaged by a warrantor's failure to comply with a written or implied warranty may file suit for damages or equitable relief. 15 U.S.C. § 2310(d)(1). In addition, it allows such a consumer to bring a federal private cause of action for breach of written or implied warranty for claims exceeding $50,000. 15 U.S.C. § 2310(d)(3)(B). There are two types of written warranties under the Act: full warranties and limited warranties. *See* 15 U.S.C. § 2303(a). A full warranty must be conspicuously designated as such and meet the Federal minimum standards for warranty set forth in § 2304. Among the remedies required under a full remedy is the right of the consumer to elect either a full refund of the purchase price or a replacement of the product if the warrantor cannot remedy defects or malfunctions after reasonable attempts to do so. 15 U.S.C. § 2304(a)(4).

In this case, Winnebago offered only a limited warranty, and thus there is no right under § 2304 to a refund or replacement vehicle. However, the Act also allows consumers to enforce written and implied warranties in federal court, borrowing state causes of action. *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 956 (7th Cir. 1998). The Lamonts contend that Wisconsin law does afford them the election of a refund as a remedy for breach of the written and implied warranties extended to them under the circumstances of this case and that it is that remedy that they seek here. Winnebago, on the other hand, contends that its warranty expressly limits the Lamonts' remedy to repair of those parts of the motor home covered by the warranty and excludes

11

consequential damages such as inconvenience, loss of time, travel and lodging. Winnebago also denies that it gave any implied warranty because it never dealt with the Lamonts. They purchased the motor home from Crystal Valley RV, a dealership that sells all types of motor homes, not just Winnebagos. (Def.'s PFOF ¶ 3.) Before turning to the merits of the claim, however, it is first necessary to address the question of jurisdiction.

### A. Federal Jurisdiction

This Court clearly had original jurisdiction over the Wisconsin Lemon Law claim pursuant to 28 U.S.C. § 1332, since the parties are citizens of different States and the amount in controversy exceeded $75,000. The Lamonts are citizens of Wisconsin, and Winnebago is a citizen of Iowa, where it is incorporated and has its principal place of business. Pursuant to section 218.0171(7), the Lamonts sought twice their pecuniary loss, which included the purchase price of $67,955 plus incidental expenses, and thus the Lemon Law claim easily exceeded the $75,000 jurisdictional amount. But with the Lemon Law claim now gone, the question arises whether federal jurisdiction exists as to the Magnuson-Moss claim.

Federal jurisdiction exists when a claim arises under federal law. 28 U.S.C. § 1331. The Magnuson-Moss Act is, of course, a federal law, but it authorizes suits in federal court only in cases in which the amount in controversy reaches "the sum or value of $50,000 (exclusive of interest or costs), computed on the basis of all claims to be determined in this suit[.]" 15 U.S.C. § 2310(d)(3)(B). In *Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402 (7th Cir. 2004), the Seventh Circuit concluded that jurisdictional limit was not met and federal jurisdiction was lacking even though the plaintiff was seeking a refund of the $69,513 purchase price he paid for a new 2000 Jaguar XK8. As in this case, the plaintiff could not recover a refund under Magnuson-Moss'

12

substantive provisions because the warranty provided by Jaguar was a limited one not subject to 15 U.S.C. § 2304. But as noted above, the Act also allows consumers to enforce written and implied warranties in federal court, borrowing state law causes of action, and the *Schimmer* plaintiff argued, as the Lamonts do here, that the applicable state law allowed a refund of the purchase price under the facts presented. Since the purchase price exceeded $50,000, the defendant, who had removed the case from state court, argued that the amount in controversy requirement was met. *Id.* at 405.

The *Schimmer* Court disagreed, noting that even if the plaintiff recovered a refund of the $69,513 purchase price, Jaguar would be entitled to retake possession of the car, which was then worth $54,013, and receive a credit for the value the plaintiff received for the use of the vehicle while it was in his possession. "Hence, Schimmer's true money damages—and concomitantly, the true amount in controversy—would equal only the difference between the price of the new car and the worth of the allegedly defective car, reduced by his beneficial use of the defective car. Jaguar could not lose $69,513, any more than Schimmer could gain that amount." *Id.* at 405-06.

Applying the same analysis here, it appears that original federal jurisdiction over the Lamonts' Magnuson-Moss claim may be lacking. The purchase price for the motor home and the incidental expenses the Lamonts incurred total $74,930. (Compl. ¶ 4.) Unless the present value of the motor home, plus the value the Lamonts received for the use of the vehicle, is less than $24,930, their loss cannot exceed the $50,000 jurisdictional amount. Unlike *Schimmer*, the record does not reveal the present value of the vehicle, and thus I cannot unequivocally determine that original jurisdiction over the claim does not exist. But it seems doubtful that the present value of the motor home would be so low.

While the Lemon Law claim was still alive, it did not matter whether the Court had original jurisdiction over the Magnuson-Moss claim since it could assert supplemental jurisdiction over the

Case 1:07-cv-01160-WCG    Filed 08/07/08    Page 13 of 23    Document 42

claim pursuant to 28 U.S.C. § 1367.  But with the Lemon Law claim now gone, the favored practice is to dismiss state law claims over which there is no original federal jurisdiction.  *See Sanchez & Daniels v. Koresko*, 503 F.3d 610, 615 (7th Cir. 2007).  Notwithstanding the foregoing, however, I conclude that the better course here is to retain jurisdiction and proceed to address the Magnuson-Moss claim.  Considering the fact that the Court clearly has supplemental jurisdiction over the claim, and its original jurisdiction is only uncertain and not clearly lacking, and also the fact that the parties have already briefed the Magnuson-Moss issue, I conclude that the interests of efficiency and economy of resources warrant the exercise of discretion in favor of retaining jurisdiction.  I therefore turn to the merits of Winnebago's motion.

**B.  Implied Warranty**

The parties agree that state law controls the interpretation of implied warranty claims under the Act.[3]  *See Voelker v. Porsche Cars North America, Inc.*, 353 F.3d 516, 525 (7th Cir. 2003).  As part of their Magnuson-Moss claim, the Lamonts contend that Winnebago breached an implied warranty of merchantability, which arose by virtue of section 402.314 of Wisconsin's version of the Uniform Commercial Code (UCC).  (Br. Opp. 18.)  A warranty of merchantability, in this context, means that the motor home was "fit for the ordinary purpose for which such goods are used."  Wis. Stat. § 402.314(2)(c).  Relying on *Mayberry v. Volkswagon of America, Inc.*, 2005 WI 13, 278 Wis. 2d 39, 692 N.W.2d 226, the Lamonts argue that the measure of damages for breach of this remedy is "the difference between the value of the vehicle as warranted and its actual value at the time and

---

[3]Notwithstanding the fact that the motor home was purchased in Illinois from an Illinois dealer, both parties rely on Wisconsin law in their respective arguments concerning the plaintiffs' state law claims.  The Court will accept their apparent agreement that Wisconsin law governs.  *See Kochert v. Adagen Medical Intern., Inc.*, 491 F.3d 674, 677 (7th Cir. 2007) ("Where the parties have not identified a conflict in state law, we will generally apply the law of the forum state.")

14

place of acceptance." (Br. Opp. 19-20.) Under this measure, the Lamonts argue, they are not precluded from recovering even the purchase price for the vehicle if they are able to establish that the difference between the value of the vehicle as warranted and its actual value at the time and place of acceptance is equal to the purchase price. (Br. Opp. at 20.)

Winnebago argues, however, that no implied warranties could arise in this case because it has no privity of contract with the Lamonts. Under Wisconsin law, Winnebago argues, privity of contract is essential to a cause of action for breach of implied warranty. Because the Lamonts purchased the motor home from Crystal Valley RV and never dealt with Winnebago, Winnebago contends that there are no implied warranties running from it and the only remedies the Lamonts have against Winnebago, if any, arise under the limited warranty it extended in writing to all new motor home purchasers. In fact, Winnebago argues that privity of contract is also a prerequisite for breach of express warranty claims and thus the Lamonts claim for breach of its express warranty fails as well. (Br. Supp. at 5-7.)

Winnebago is clearly mistaken in its contention that Wisconsin requires the purchaser to deal directly with the manufacturer of a product in order to sue the manufacturer for breach of the manufacturer's express warranty. *See Sunnyslope Grading, Inc. v. Miller, Bradford and Risberg, Inc.*, 148 Wis. 2d 910, 437 N.W.2d 213 (1989) (holding that the ultimate purchaser of a machine and the machine's manufacturer are parties to an enforceable warranty even though purchase was made through dealer). But the question of whether an implied warranty can arise in the absence of a contract is less clear.

It is true, as the Lamonts point out, that under the UCC, a warranty of merchantability is implied in every contract for the sale of goods if the seller is a merchant with respect to goods of

15

that kind, unless the warranty is excluded or modified by contract. Wis. Stat. § 402.314(1). Unless

excluded or modified by contract, a warranty that the goods will be fit for a particular purpose is

also implied "where the seller at the time of contracting has reason to know any particular purpose

for which the goods are required and that the buyer is relying on the seller's skill or judgment to

select or furnish suitable goods . . . ." Wis. Stat. § 402.315. But it is clear from the language of the

UCC that these warranties can only arise by implication where there is a contract between the

parties. *See Bushendorf v. Freightliner Corp.*, 13 F.3d 1024, 1027 (7th Cir. 1993) ("An implied

warranty is something the law reads into a contract to save the parties the trouble of having to

negotiate an express term; it is an off-the-rack term. If the parties don't like it, if they would prefer

to custom-make their own term, they are free to do so, free that is to disclaim the implied

warranty."); *Ball v. Sony Electronics, Inc.*, 2005 WL 2406145, *4 (W.D. Wis. September 28, 2005)

("The implied warranties of merchantability and fitness for a particular purpose, Wis. Stat

§§ 402.314 and 402.315, by their terms are created only between seller and buyer as part of the sales

contract, except to the limited and inapplicable exception of § 402.318."); *but see Morrow v. New

Moon Homes*, 548 P.2d 279, 291-92 (Alaska 1976) (holding that "a manufacturer can be held liable

for direct economic loss attributable to a breach of his implied warranties under the UCC, without

regard to privity of contract between the manufacturer and the ultimate purchaser"). Here, it is

undisputed that there was no contract between the Lamonts and Winnebago, and the Lamonts point

to no other Wisconsin statute that creates by implication a warranty on the part of one not a party

to a contract with the buyer.

Some courts in other jurisdictions have judicially imposed an implied warranty of

merchantability on the part of manufacturers that arises independently of any direct sale to, or

16

privity with, the ultimate buyer. *See, e.g., Santor v. A & M Karagheusian, Inc.*, 44 N.J. 52, 207 A.2d 305 (1965), *Pack v. Damon Corp.*, 434 F.3d 810 (6th Cir. 2006) (applying Michigan law). Wisconsin, however, has not joined those states that have done so and instead affirmed the principle that privity of contract must exist between a buyer and seller in order to create an implied warranty when it adopted strict liability as a tort concept, refusing to abrogate the privity requirement in warranty law. *Dipple v. Sciano*, 37 Wis.2d 443, 452-558, 155 N.W.2d 155 (1967) (dismissing claim for breach of implied warranty for lack of privity). Later decisions have both recognized and affirmed the State's law on the issue. *Twin Disc, Inc. v. Big Bud Tractor, Inc.*, 582 F. Supp. 208, 215 (E.D. Wis. 1984), *aff'd*, 772 F.2d 1329 (7th Cir. 1985); *Paulson v. Olson Implement Co., Inc.*, 107 Wis.2d 510, 319 N.W.2d 855 (1982).

Although the Court in *Mayberry* addressed the measure of damages for breach of an implied warranty of merchantability that was alleged to have arisen under similar circumstances, the decision contains no discussion as to whether and how such a warranty arose in the first place. Apparently, the issue had never been raised. The Lamonts have pointed to no Wisconsin case that abolishes the requirement of privity of contract for implied warranty claims. And clearly, the Magnuson-Moss Act does not itself create an implied warranty. The Act prohibits a supplier who makes a written warranty or enters into a service contract with the consumer from disclaiming or modifying any implied warranty that may exist, 15 U.S.C. § 2308, but it relies on state law to determine whether such a warranty arises in the first place. *See Voelker*, 353 F.3d at 525 ("Because §§ 2308 and 2304(a) do not modify, or discuss in any way, a state's ability to establish a privity requirement, whether privity is a prerequisite to a claim for breach of implied warranty under the Magnuson-Moss Act therefore hinges entirely on the applicable state law.").

17

I conclude from the foregoing that since there was no contract or sale between the Lamonts and Winnebago, no implied warranties could have arisen as between those parties. To the extent the Lamonts have any claim under Magnuson-Moss, it must be based on the limited written warranty Winnebago extended to all purchasers of its new motor homes.

## C. Express Limited Warranty

Under the Limited Warranty provided on its new vehicles, Winnebago made no representations as to the quality of its motor homes; nor did it promise that they would have no mechanical problems or never break down. Instead, Winnebago agreed to provide what it referred to as "Basic Coverage" for a period of twelve months or 15,000 miles, whichever occurred first. (Cade Aff., Ex. A, Ex. 2 at 23.) The Basic Coverage consists of Winnebago's promise to repair or replace any part of the vehicle subject to the warranty which was found to be defective in material or workmanship. (*Id.*) The Warranty further provided:

> THE PERFORMANCE OF REPAIRS IS THE EXCLUSIVE REMEDY UNDER THIS WRITTEN WARRANTY OR ANY IMPLIED WARRANTY. WINNEBAGO INDUSTRIES SHALL NOT BE LIABLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES FOR LOSS OF TIME, INCONVENIENCE, OR OTHER CONSEQUENTIAL DAMAGE INCLUDING EXPENSE FOR GASOLINE, TELEPHONE, TRAVEL, LODGING, LOSS OR DAMAGE TO PERSONAL PROPERTY, OR LOSS OF REVENUE RESULTING FROM BREACH OF THIS WRITTEN WARRANTY OR ANY IMPLIED WARRANTY. Some states do not allow limitations on how long an implied warranty will last or the exclusion or limitation of incidental or consequential damages, so the above limitations or exclusions may not apply to you.

(*Id.*) The warranty also included a list of items that were not subject to warranty coverage, including the chassis, drivetrain and related components, wheels, and tires, all of which were

18

covered under the specific manufacturer's individual warranties. Other items, such as windshield wiper blades, lubricants, fluids and filters, were not covered at all.[4] (*Id.*)

On the basis of this language, Winnebago contends that the Lamonts' claim for a refund of the purchase price and consequential damages fails. Because the warranty it gave is a limited warranty within the meaning of the Magnuson-Moss Act, Winnebago contends it has no obligation under the Act to offer a refund or pay consequential damages. (Br. Supp. at 7.) And because its obligation under its Limited Warranty is to repair or replace defective parts covered by the warranty, Winnebago contends that it can only be found in breach if it failed to repair or replace a component covered by its Limited Warranty. Since the defects alleged by the Lamonts relate to the vehicle chassis, a component manufactured and warranted by Ford, Winnebago argues that warranty claim against it fails. (Br. Supp. at 9-10.)

Despite these express limitations of Winnebago's Limited Warranty, the Lamonts argue that they are nevertheless entitled to a full refund of the purchase price, as well as consequential damages, because the limited remedy offered by Winnebago effectively deprives them of reasonable protection against breach. In support of this argument, the Lamonts rely on *Murray v. Holiday Rambler, Inc.*, 83 Wis. 2d 406, 265 N.W.2d 513 (1978), where the Wisconsin Supreme Court, applying section 402.719(2) of the Wisconsin Statutes, held that a repair and replacement warranty for a motor home failed of its essential purpose when the owners continued to have problems with

---

[4]Although the Lamonts claim that they received a "1yr/15,000 bumper to bumper" warranty, the only evidence they offer to substantiate their claim is a hand-out they apparently received from the dealer. (Lawrence Lamont Aff. ¶ 15, Ex. L.) There is no evidence that Winnebago authorized the dealer to hand out such material. Indeed, the Limited Warranty Winnebago provided expressly disclaims "any undertaking, representation or warranty made by dealers selling its product beyond those herein expressed." (Cade Aff., Ex. A, Ex. 2 at 23.)

19

the vehicle after repeatedly taking it back to authorized dealers for repairs. "Where the seller is given reasonable opportunity to correct the defect or defects, and the vehicle nevertheless fails to operate as should a new vehicle free of defects, the limited remedy fails of its essential purpose." 83 Wis. 2d at 421. Under such circumstances, *Murray* held, the buyer may then invoke any of the remedies available under the UCC, including the right to revoke acceptance of the goods. The Lamonts argue that the same principle applies here. Alternatively, and citing *Mayberry* again, the Lamonts also contend that they are entitled to recover as damages for Winnebago's breach of its warranty the difference between the value of the motor home as warranted and its actual value at the time and place of acceptance, notwithstanding the language of any express warranty. (Br. 19-20.)

Addressing the Lamonts' alternative measure of damages first, I conclude that *Mayberry* does not apply under the circumstances of this case. *Mayberry* held that the proper measure of damages for a breach of warranty is the difference between the value of the goods as warranted at the time and place of acceptance and their actual value at that time and place. 692 N.W.2d 226, ¶ 39. The Court's holding was essentially a straightforward application of section 402.714(2) of the Wisconsin UCC, which states: "The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." Wis. Stat. § 402.714(2). But as already noted, Winnebago was not a party to any transaction with the Lamonts governed by the UCC. Thus, section 402.714(2) does not apply.

20

Even if the transaction was governed by the UCC, however, the measure of damages set forth in section 402.714(2) would not apply. By its terms, that measure only applies to a warranty that includes of an affirmation of fact or description regarding the goods that the seller makes to the buyer and which is made part of the basis of the bargain. *See* Wis. Stat. § 402.313(1). Where, for example, the seller warrants his eggs to be Extra Large, but delivers Medium, the buyer's damages would be the difference between the value of Extra large and Medium eggs at the time and place of delivery. Here, however, the Limited Warranty provided by Winnebago did not include an affirmation of fact concerning the condition of the vehicle when sold. Winnebago made no representations or promises as to the condition of the motor home at the time and place of sale, and for the reasons already explained, none was implied. Instead, Winnebago's limited warranty consisted of its promise that it would repair or replace the defective parts it covered. Without any representation as to the condition of the vehicle at the time and place of sale, a crucial element of the measure of damages prescribed by section 402.714(2) is missing. Under these circumstances, the measure of damages called for in *Mayberry* is not applicable.

The Lamonts' argument that under *Murray* they are entitled to recover the full purchase price of the motor home also suffers from the fact that the transaction is not governed by the UCC. *Murray* represents a straightforward application of section 402.719(2). If, as I have already concluded, the UCC does not apply, that provision cannot be used to overcome the clear language of Winnebago's Limited Warranty.

The argument that the warranty failed its essential purpose is also undermined by the fact that almost all of the defects alleged by the Lamonts were not covered by the Limited Warranty Winnebago provided. The problems that the Lamonts have alleged appear for the most part to relate

21

to the chassis of the vehicle, a component Winnebago explicitly excluded from the limited warranty it provided. (Aff. of Lawrence A. Lamont ¶ 21; Aff. of Carol A. Lamont ¶ 18.) Winnebago has no obligation to provide a remedy for breach of a warranty it never gave. Thus, to the extent the Lamonts' complaints are directed to Winnebago's failure to repair parts or components not covered by its warranty, their contention that the repair-or-replacement remedy failed its essential purpose would lack merit even if section 402.719(2) did apply.

Yet, I am unable to determine from the record now before me that Winnebago fully met its obligations under its written warranty. Although most of the defects alleged by the Lamonts appear to have involved parts or components not covered by Winnebago's Limited Warranty, neither party has established beyond dispute that this is the case as to all of the defects alleged. (Def.'s PFOF ¶ 16; Pl.'s Resp.) The record is fuzzy as to what parts were allegedly defective, whether they were covered by the warranty, and whether Winnebago repaired or replaced them during the warranty period. To be sure, the primary relief the Lamonts have sought in this lawsuit is the refund of their purchase price, together with incidental damages. While this remedy might have been available against the dealer from whom they purchased the motor home, it is not available under the Limited Warranty given by Winnebago. But it does not follow that the Lamonts are entitled to no relief from Winnebago. As noted, the parties dispute whether Winnebago fulfilled its obligation to repair or replace the parts with defects in materials or workmanship that it did warrant. True, the Lamonts have not alleged that Winnebago ever refused to repair any defect covered by the warranty. But willingness to attempt a repair is not sufficient to establish that Winnebago met its obligations. Winnebago's obligation under its Limited Warranty was to repair or replace covered parts that were defective in material or workmanship. If it failed to do so, the Lamonts may be entitled to recover

22

the cost of the repairs in damages. *See Pack v. Damon Corp.*, 434 F.3d at 814-15 (reversing district court's grant of summary judgment on ground, inter alia, that questions of material fact existed as to whether some of the continuing defects were covered under RV manufacturer's repair-or-replace warranty). Further proceedings are needed to determine whether such breach occurred and, if so, what remedy is available.

## CONCLUSION

For the reasons stated above and based on the undisputed facts before me, I conclude that the Lamonts neither purchased nor accepted transfer of the motor home in Wisconsin. The motor home thus does not meet the definition of a motor vehicle as set forth in Wisconsin's Lemon Law, and the claim under that Law must be dismissed. As to the Magnuson-Moss claim, I conclude that under Wisconsin law no warranty arises by implication under the circumstances of this case and any claim based on such warranty is dismissed. Because the evidence is disputed as to whether Winnebago met its obligations under its written warranty, however, summary judgment is denied as to that part of the Magnuson-Moss claim. The Clerk is directed to set this matter on the calendar for further scheduling.

**SO ORDERED** this __7th__ day of August, 2008.

           s/ William C. Griesbach_____
           William C. Griesbach
           United States District Judge